JAY T. PINTACUDA and wife LUCRETIA PINTACUDA, Plaintiffs v.
JACK ZUCKEBERG, Defendant

No. COA02-905

(Filed 5 August 2003)

### 1. Negligence— intervening cause—traffic accident—last second swerve

Summary judgment should not have been granted for defendant in a negligence action arising from a traffic accident where defendant stopped his car abruptly on an interstate highway, plaintiff attempted to avoid the accident by changing lanes, and he was injured when his motorcycle skidded. Defendant contended that the skid constituted an intervening cause, but defendant's alleged negligence set in motion a continuous succession of events, and plaintiff's skid was foreseeable.

### 2. Negligence— contributory—traffic accident—split-second judgment—hindsight irrelevant

Summary judgment should not have been granted for defendant on contributory negligence in a traffic accident case where defendant stopped abruptly on an interstate and plaintiff was injured when his motorcycle skidded as he tried to change lanes. Plaintiff testified in his deposition that he might have been able to stop without changing lanes, based on where his motorcycle came to rest, but hindsight is irrelevant. The proper question is whether a reasonable person, making a split-second decision in this situation, would have believed it necessary to swerve. Furthermore, where the motorcycle came to rest was in dispute.

### 3. Evidence— official accident reports—admissible

Official accident reports are admissible as records of regularly conducted activity and as public records and reports.

Judge TIMMONS-GOODSON dissenting.

Appeal by plaintiffs from order entered 17 May 2002 by Judge Robert D. Lewis in Buncombe County Superior Court. Heard in the Court of Appeals 26 March 2003.

*Roberts & Stevens, P.A., by Anthony Alan Coxie and Jacqueline D. Grant, for plaintiffs-appellants.*

*Van Winkle Buck Wall Starnes & Davis, P.A., by W. Kevin Mclaughlin, for defendant-appellee.*

GEER, Judge.

Plaintiffs Jay T. Pintacuda and his wife Lucretia Pintacuda appeal from the superior court's order granting defendant's motion for summary judgment. Mr. Pintacuda was severely injured when defendant abruptly stopped his car on an interstate highway and Mr. Pintacuda's motorcycle skidded as he attempted to avoid colliding with defendant's car. Defendant contends that no genuine issue of material fact exists as to the issues of proximate cause and contributory negligence and that the trial court therefore properly granted summary judgment. After reviewing the record, we conclude that the evidence raises issues of fact as to whether Mr. Pintacuda's skid constituted an independent intervening cause superseding defendant's negligence and as to whether Mr. Pintacuda was contributorily negligent. We, therefore, reverse.

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c) (2001). The party moving for summary judgment must "clearly demonstrate the lack of any triable issue of fact and entitlement to judgment as a matter of law." *Marcus Bros. Textiles, Inc. v. Price Waterhouse, LLP*, 350 N.C. 214, 220, 513 S.E.2d 320, 324 (1999). In reviewing a motion for summary judgment, the evidence is viewed in the light most favorable to the party opposing the motion. *Id.* Where the pleadings and proof disclose that no cause of action exists, summary judgment is properly granted. *See Kessing v. National Mortgage Corp.*, 278 N.C. 523, 534-35, 180 S.E.2d 823, 830 (1971).

Plaintiff—a 55-year old SBI forensic scientist with more than 35 years of experience on motorcycles—was riding his motorcycle under the speed limit and at least three car lengths behind defendant's car in the left-hand lane of I-240 in Asheville. According to plaintiff's evidence, as he came over a rise in the road, he saw defendant stop his car "instantaneously," heard a noise, and saw the hood of defendant's car fly up. He immediately applied both his front and rear

brakes, but feared he would crash into defendant's car and either be thrown over that car or be impaled on the back of the car.

Plaintiff made a split-second decision to avoid the impact by moving over into the right-hand lane, which he knew was clear. Unfortunately, as he swerved to avoid the car in front of him, his motorcycle began to skid for unknown reasons and came down in the right-hand lane. Plaintiff testified in his deposition that he "skidded on something or hit the reflector marker" and his motorcycle "came down." Although plaintiff was wearing protective clothing, he was seriously injured.

On 20 September 2000, plaintiffs filed a complaint alleging that defendant was negligent in failing to keep his vehicle under control, failing to bring his vehicle to a stop, and driving in a careless and heedless manner in wanton disregard of the rights and safety of others. Defendant filed a motion for summary judgment, which was heard by the trial court on 22 April 2002. Finding no genuine issue as to any material fact, the trial court concluded that defendant was entitled to judgment as a matter of law and therefore granted summary judgment in favor of defendant. From this order, plaintiffs appeal.

---

[1] The primary issue on appeal is whether plaintiff offered sufficient evidence to raise an issue of fact regarding whether defendant's negligence proximately caused plaintiff's injuries. As our Supreme Court has noted, "it is only in exceptional cases, in which reasonable minds cannot differ as to foreseeability of injury, that a court should decide proximate cause as a matter of law." *Williams v. Carolina Power & Light Co.*, 296 N.C. 400, 403, 250 S.E.2d 255, 258 (1979). We do not believe that this case falls into the exceptional category.

Although the critical issue with respect to proximate cause is the foreseeability of the plaintiff's injury, the law does not require that the precise injury be foreseeable to the defendant. *Hairston v. Alexander Tank & Equipment Co.*, 310 N.C. 227, 233-34, 311 S.E.2d 559, 565 (1984). Instead, "[t]he test of proximate cause is whether the risk of injury, not necessarily in the precise form in which it actually occurs, is within the reasonable foresight of the defendant." *Williams*, 296 N.C. at 403, 250 S.E.2d at 258. Phrased differently, a plaintiff is only required to prove that the defendant, in the exercise of reasonable care, "might have foreseen that *some* injury would result from his act or omission, or that consequences of a *generally*

*injurious nature* might have been expected." *Hairston,* 310 N.C. at 234, 311 S.E.2d at 565 (internal quotation marks omitted; emphasis added).

In considering whether the harm to a plaintiff was reasonably foreseeable to a defendant, the law "fix[es] [defendant] with notice of the exigencies of traffic . . . ." *Id.* Based on common driving experience, if a driver comes to an abrupt and unexpected halt on a highway, he should reasonably foresee (1) that a vehicle behind him will have the choice of either swerving to avoid his car or attempting to stop before rear-ending him; and (2) that his action creates a risk of injury to the driver of the following vehicle. Thus, in this case, a jury could reasonably conclude that Mr. Pintacuda's swerve to avoid crashing into Mr. Zuckeberg was foreseeable and that Mr. Zuckeberg could have foreseen that his coming to an abrupt standstill on I-240 would likely result in some injury to Mr. Pintacuda. We cannot conclude as a matter of law that the possibility of Mr. Pintacuda's motorcycle skidding was an unforeseeable result of Mr. Zuckeberg's stopping his car unexpectedly on I-240.

Our Supreme Court has reached the same conclusion when considering analogous circumstances. In *Hall v. Coble Dairies, Inc.,* 234 N.C. 206, 67 S.E.2d 63 (1951), the defendant had parked a tractor-trailer on a paved portion of the highway. The plaintiff, after coming over a rise in the highway, saw the truck and was forced to swerve sharply in an unsuccessful attempt to avoid crashing into the truck. After colliding with the truck, the plaintiff, dazed but uninjured, got out of the car to assist his injured wife and was struck by another car.

The Supreme Court reversed the trial court's dismissal of the case, holding that these facts were sufficient to support a finding that the truck company's negligence was the proximate cause of plaintiff's injuries:

> [I]t is manifest that the defendants are chargeable with having foreseen that consequences of a generally injurious nature would likely result from their conduct in leaving the tractor-trailer on the paved portion of the highway, without lights, flares, and signals as alleged. Upon this record, we cannot say it was beyond the pale of natural consequences that the plaintiff in the ensuing collision was severely shocked, to the extent that he was "dazed and addled" and in that condition walked out on the highway and was hit by a passing motorist.

*Id.* at 211, 67 S.E.2d at 66. If it is sufficiently foreseeable that a person could be struck by a second vehicle while walking in a daze after an accident, then it is sufficiently foreseeable that a motorcycle would skid while attempting to avoid a collision with a stopped car ahead. *See also Hairston*, 310 N.C. at 235, 311 S.E.2d at 566 ("Under the circumstances here disclosed, we believe a jury could find that a reasonably prudent person should have foreseen that [the dealership's] negligence in failing to tighten the lugs on the wheel of the new automobile could cause the car to be disabled on the highway and struck by another vehicle, causing harm to the driver. Absent [the dealership's] original negligence, the tragic series of events on I-85 would not have occurred; the danger was foreseeable.").

Defendant points to Mr. Pintacuda's deposition testimony in which he acknowledged that he did not know what precisely caused his motorcycle to skid as he changed lanes and argues that the existence of another, unknown cause of the skid precludes a jury from finding that Mr. Zuckeberg's unexpected stop was the proximate cause of Mr. Pintacuda's injuries. It is, however, well-established that "[t]here may be more than one proximate cause of an injury." *Hairston*, 310 N.C. at 234, 311 S.E.2d at 565. When two or more proximate causes join together to produce an injury, the first cause is insulated from liability *only if* it constitutes an independent, intervening cause that supersedes the original negligence. *Hall*, 234 N.C. at 211, 67 S.E.2d at 66-67.

It is not enough merely to show, as defendant has here, that some other factor came into play to cause a plaintiff's injuries. That second cause, in order to be a superseding intervening cause, must:

interven[e] between the original negligent act or omission and the injury ultimately suffered, which turns aside the natural sequence of events and produces a result which would not otherwise have followed, and which could not have been reasonably anticipated . . . . The causal connection must be actually broken and the sequence interrupted in order to relieve the defendant from responsibility. The mere fact that another person or agency concurs or co-operates in producing the injury or contributes thereto in some degree, whether large or small, is not of controlling importance.

*Id.* at 211-12, 67 S.E.2d at 67.

In applying this test, the courts have again focused on foreseeability. The causal connection is not broken "if the intervening event is one which might in the natural and ordinary course of things, be anticipated as not entirely improbable, and the defendant's negligence is an essential link in the chain of causation." *Id.* at 212, 67 S.E.2d at 67 (internal quotation marks omitted). Or, as stated in *Adams v. Mills*, 312 N.C. 181, 194, 322 S.E.2d 164, 173 (1984), "in order for the conduct of the intervening agent to break the sequence of events and stay the operative force of the negligence of the original wrongdoer, the intervening conduct must be of such nature and kind that the original wrongdoer had no reasonable ground to anticipate it." If the subsequent cause "is the very risk created" by the original negligence, then the original negligent actor is still liable. *Id.* at 195, 322 S.E.2d at 173.

Defendant relies on *McNair v. Boyette*, 15 N.C. App. 69, 189 S.E.2d 590, *aff'd*, 282 N.C. 230, 192 S.E.2d 457 (1972). In *McNair*, the defendant had negligently collided with another car. The plaintiff arrived after that collision and determined that no one was injured. After the plaintiff then crossed over the road to get a flashlight from another car to use in directing traffic, he was struck by yet another car. The court held that the last car's negligence was "independent" because "it resulted in injury to plaintiff after the alleged negligence of [the defendant] had ceased to operate," because plaintiff was not engaged in rescuing or helping defendant, and because defendant could not foresee that the last car would strike plaintiff when he was starting to direct traffic. *Id.* at 73, 189 S.E.2d at 593. The critical fact in *McNair* is that the events set in motion by the defendant's negligence had essentially concluded before plaintiff was injured.

In contrast, the Supreme Court in *Hall*, when considering facts more in line with those of this case, held that the question whether a second vehicle's negligence in striking the plaintiff was a superseding cause was not one that could be decided as a matter of law. 234 N.C. at 213, 67 S.E.2d at 68. The Court reasoned:

[I]t appears that the alleged negligence of the defendants caused the initial collision; that in the collision the plaintiff was "dazed and addled," and in that condition walked out on the highway and was hit by the passing motorist and thereby suffered the injuries sued on. *The force set in motion by the defendants appears to have continued in active operation through the force it stimulated into activity down to the final injury. Thus, it would seem*

*the plaintiff has alleged a continuous succession of events, so
linked together as to make a natural whole.*

*Id.* (emphasis added).

Similarly, in this case, Mr. Zuckeberg's alleged negligence in coming to an unanticipated and immediate stop on I-240 set in motion a
"continuous succession of events"—Mr. Pintacuda's swerve to avoid
a collision, skidding, and resulting injury—that is "linked together"
and "a natural whole." *Id.* at 212, 67 S.E.2d at 68. Mr. Zuckeberg's
negligence had not ended and, as discussed above, Mr. Pintacuda's
skid, while reacting to that negligence, was foreseeable.

A jury could reasonably find that the risk that Mr. Pintacuda
might skid on his motorcycle while attempting to prevent a crash was
precisely one of the risks created by Mr. Zuckeberg's negligence.
Further, a jury could find that but for Mr. Zuckeberg's stopping, Mr.
Pintacuda would not have swerved abruptly into the right lane; that if
he had not swerved, he would not have skidded and been injured; and
that Mr. Zuckeberg could reasonably have expected these events to
occur as a result of his actions. *See also Riggs v. Akers Motor Lines,
Inc.*, 233 N.C. 160, 165, 63 S.E.2d 197, 201 (1951) ("If the intervening
cause is in reality only a condition on or through which the negligence of the defendant operates to produce an injurious result, it
does not break the line of causation . . . .").

[2] Defendant argues alternatively that plaintiff's swerve into the
right-hand lane and resulting skid constituted contributory negligence. Defendant contends that plaintiff had sufficient time to apply
his breaks and safely merge into a different lane, but negligently
failed to maintain control of his motorcycle. For evidence supporting
this conclusion, defendant points to plaintiff's deposition testimony
that, based on where he recalls his motorcycle coming to rest, he
might have been able to stop in time had he not changed lanes.

This reasoning misapplies traditional negligence analysis. We do
not judge people's actions based on "20-20 hindsight." Rather, we ask
whether a person's actions were reasonable in light of the circumstances at the time of the actions.

In other words, it is irrelevant that Mr. Pintacuda may believe
now, after completion of all the events and while reflecting in a deposition, that he could have come to a stop safely without changing
lanes. The proper question is whether a reasonable person, required
to make a split-second decision while traveling 35 to 40 miles an hour

and when only three car lengths from the car in front, would have believed it necessary to swerve to avoid a collision with that car. Further, Mr. Pintacuda's after-the-fact assessment is based on a fact in dispute. He recalls that his motorcycle came to rest just short of defendant's car, yet the official accident report placed the motorcycle alongside defendant's car.[1]

Because the evidence, when viewed in the light most favorable to the plaintiff, presents issues of fact as to both proximate cause and contributory negligence, we reverse the superior court's order granting summary judgment.

Reversed.

Judge BRYANT concurs.

Judge TIMMONS-GOODSON dissents.

TIMMONS-GOODSON, Judge, dissenting.

After a careful review of the record, I respectfully dissent. The majority concludes that summary judgment was inappropriate because of the proximate cause issue. This Court has previously stated that when a plaintiff has become aware that potential dangers have been created by the negligence of another, and then " 'by an independent act of negligence, brings about an accident,' " the defendant is relieved of liability, " 'because the condition created by [the defendant] was merely a circumstance of the accident and not its proximate cause.' " *McNair v. Boyette,* 15 N.C. App. 69, 73, 189 S.E.2d 590, 593, *affirmed,* 282 N.C. 230, 192 S.E.2d 457 (1972) (quoting *Powers v. Sternberg,* 213 N.C. 41, 44, 195 S.E. 88, 90 (1938)). I believe that defendant's act of stopping his vehicle was merely a circumstance of the accident and not the proximate cause of plaintiff's injuries.

In order to state a claim for negligence, "plaintiff must show (1) that there has been a failure to exercise proper care in the performance of some legal duty which defendant owed to plaintiff under the

---

[3] 1. Defendant argues that the accident report is inadmissible hearsay, citing a 1979 case, *Smith v. Independent Life Ins. Co.,* 43 N.C. App. 269, 258 S.E.2d 864 (1979). This case, of course, predates this State's adoption of the Rules of Evidence in 1983. Official accident reports are admissible under both Rule 803(6) (records of regularly conducted activity) and Rule 803(8) (public records and reports). *See Keith v. Polier,* 109 N.C. App. 94, 98, 425 S.E.2d 723, 726 (1993).

circumstances in which they were placed; and (2) that such negligent breach of duty was a proximate cause of the injury." *Hairston v. Alexander Tank & Equipment Co.*, 310 N.C. 227, 232, 311 S.E.2d 559, 564 (1984). Therefore, upon a showing that the defendant was negligent, there must also be a "showing or determination of proximate cause." *King v. Allred*, 309 N.C. 113, 117, 305 S.E.2d 554, 557 (1983), *disc. review denied*, 315 N.C. 184, 337 S.E.2d 857 (1985). Proximate cause is defined as

> a cause which in natural and continuous sequence, unbroken by any new and independent cause, produced the plaintiff's injuries, and without which the injuries would not have occurred, and one from which a person of ordinary prudence could have reasonably foreseen that such a result, or consequences of a generally injurious nature, was probable under all the facts as they existed.

*Hariston*, 310 N.C. at 233, 311 S.E.2d at 565.

Here, the evidence fails to show that defendant was the proximate cause of plaintiff's injuries. During his deposition, plaintiff gave the following testimony:

Q: Tell me what happen[?]

A: . . . I just know I applied my brakes and then made my move to go into that next-hand lane, which I did maneuver that. I don't know whether I skidded on something or hit the reflector marker[.]

Q: —you did not intentionally lay your bike down in an attempt to slide. That wasn't an intentional act.

A: I recall that it went down. I recall that . . . I could make my maneuver because I had been scanning, and I believed that right lane to be open, . . . I had sufficient time to make my move into that right-hand lane, apply my brakes, and make my swerve into that right-hand lane.

Q: How slow or how fast do you believe you were going when you hit that object which caused your bike to begin to skid?

A: . . . I know I slowed down with the application of both the front and rear brakes. . . . I just know that I slowed down. . . . I slowed down to the point where I was able to make my swerve into the right-hand lane.

The majority contends that plaintiff made a "split-second" decision to avoid an impact with defendant's vehicle and "began to skid

*for unknown reasons.*" A review of plaintiff's testimony clearly places responsibility for the accident on him either "skidding on something" or hitting a lane reflector. Moreover, plaintiff's testimony reveals that he was aware of the potential danger created by defendant's accident, had sufficient time to apply his breaks, safely merge into a different lane, and in an independent act, failed to maintain control of his motorcycle. Therefore, it is clear that there was an independent cause, apart from defendant's collision, which resulted in plaintiff sustaining injuries. Accordingly, I would affirm the order of the trial court.